UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JONAS J. PENROSE,

        Plaintiff,

  -v-                                               1:13-CV-1060
                                                     (DNH/DJS)

UNITED STATES OF AMERICA,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

Rawls, McNelis Law Firm              Brewster S. Rawls, Esq.
*Attorneys for Plaintiff*                   Coreen A. Silverman, Esq.
211 Rocketts Way, Suite 100
Richmond, VA 23231

Office of the United States Attorney     Karen Foster Lesperance, Esq.
*Attorneys for Defendant*
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207

DAVID N. HURD
United States District Judge


**MEMORANDUM-DECISION and ORDER**


**I.   INTRODUCTION**

     Plaintiff Jonas J. Penrose commenced this action against defendant United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), and 2671, et seq., alleging negligent medical treatment. Plaintiff moved for summary judgment on the issue of liability. Pl.'s Mem. Supp. Summ. J., ECF No. 31. Defendant opposed

1

plaintiff's motion.  Def.'s Mem. Opp. Summ. J., ECF No. 35.  For the following reasons, plaintiff's partial motion for summary judgment is denied.

## II. BACKGROUND

The following facts, taken from parties' statements pursuant to Local Civil Rule 7.1, and accompanying affidavits and exhibits, are undisputed unless otherwise indicated.[1]

Plaintiff, a U.S. Marine Corps veteran, was entitled to receive care from the Department of Veteran Affairs ("VA"), which included the Albany Stratton Veteran Affairs Medical Center ("Albany VAMC"), VA New York Harbor Healthcare System, located in Manhattan ("Manhattan VAMC"),  and the VA New York Harbor Healthcare System, located in Brooklyn, New York ("Brooklyn VAMC").  Pl.'s Mem. of Law, ECF No. 31, 3 ("Pl.'s Mem.").

On May 29, 2011, plaintiff was seen by emergency physician, Herschel Tress, M.D., at the emergency department of Albany VAMC.  Pl.'s Mem. at 3; Def.'s Stmt. Material Facts, ECF No. 37, 2 ("Def.'s Stmt. M. F.").  Plaintiff complained of shoulder pain.  Id.  It seems that plaintiff sustained injury during "a barroom scuffle" when another man, weighing more than 300 pounds, fell and landed on his left shoulder.  Id.  Dr. Tress examined plaintiff and ordered x-rays of the injured shoulder.  Pl.'s Mem., 3.  Arie Mahrer, M.D., a radiologist employed at Albany VAMC, interpreted three x-rays of plaintiff's shoulder.  Id.  Dr. Tress noted "no gross deformity, tender lateral deltoid, [and] decreased rom [range of motion] from pain."  Medical Records, ECF No. 31-4, 3 ("Med. Rec.").  Dr.

---

[1] Moreover, the court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving defendant.  See Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010).  Finally, the court has also considered other materials in the record that have not been cited by the parties.  See Fed. R. Civ. P. 56(c)(3).

Mahrer found that the x-rays showed normal anatomical alignment, no fractures, and no dislocation. Def.'s Mem., 2; Pl.'s Mem., 3. Accordingly, Dr. Tress diagnosed plaintiff with a shoulder contusion, recommended that plaintiff follow up with his primary care physician, and ordered rest, ice, diclofenac, and use of a sling. Id. Dr. Tress discharged plaintiff the same day. Id. Dr. Tress did not attempt to reduce plaintiff's dislocated shoulder, and he did not refer plaintiff to an orthopedist. Pl.'s Mem., 4.

The parties dispute nearly all relevant facts beyond this point. Particularly, parties take issue with the number of appointments made with various doctors, the number of times plaintiff sought medical attention and information communicated each time.

Plaintiff contends that he called his physician, Neil Shapiro, M.D., at the Manhattan VAMC the following day, and an appointment was set for June 29, 2011. Pl.'s Mem., 4. At plaintiff's June 29 appointment at the Manhattan VAMC, Dr. Shapiro ordered x-rays of plaintiff's shoulder, which were interpreted by Josh Moosikasuwak, M.D., a radiologist. Pl.'s Mem., 5. Dr. Moosikasuwak did not find a dislocation or fracture upon review of the x-rays. Id. Likewise, Dr. Shapiro noted plaintiff had "shoulder pain – questionable rotator cuff tear [RTC] vs. frozen shoulder." Id. Plaintiff was given an appointment to begin physical rehabilitation to "break up" his frozen shoulder. Id. And plaintiff was scheduled to see a general orthopedist on July 20, 2011, which plaintiff notes was six weeks after the initial injury. Id.

However, defendant contends that plaintiff failed to follow up with his primary care physician and waited another month before visiting a walk-in clinic on June 29, 2011. Def.'s Mem., 2; Def.'s Stmt. M. F., ¶ 15. Defendant further contends that Dr. Shapiro noted that he "discussed with ortho" and plaintiff would "be seen in 1- weeks [sic]." Id.

3

Moreover, Dr. Shapiro never made a diagnosis according to defendant and instead only "noted" patient's condition and consulted with an orthopedist. Def.'s Stmt. M. F., ¶ 22. The orthopedic clinic at the Manhattan VAMC scheduled an appointment for plaintiff to see an orthopedist on July 20, 2011, but plaintiff failed to appear for the appointment. Id. It is unclear why plaintiff did not attend the appointment and did not reschedule. See id.; Pl. Stmt. M. F., ¶ 27. Plaintiff did not seek treatment again until August 9, 2011, when he visited the Manhattan VA walk-in clinic, reporting shoulder pain and seeking pain medication. Def.'s Mem., 2.

Defendant contends that following the August 9, 2011 visit, the orthopedic clinic left messages for plaintiff on August 11 and 12, attempting to reschedule plaintiff's orthopedist appointment. Def.'s Mem., 2-3. Plaintiff scheduled an appointment for August 17, 2011, but failed to appear. Id. He was rescheduled for August 31, 2011, and failed to appear. Id. at 3. And plaintiff was again rescheduled for September 19, 2011, but again failed to appear. Id.

Defendant further contends that plaintiff failed to attend and/or cancelled Pain Management/Rehabilitation ("PM&R") Clinic appointments on July 18, August 22 and August 29, 2011. Id. When plaintiff finally appeared on September 19, 2011, "he reported that he had dislocated his shoulder four months earlier and had been treated at the emergency room with 2 shots of Demerol and a manual relocation." Def.'s Mem., 3. Defendant points to October 12, 2011, as plaintiff's "first and only" occupational therapy treatment, which consisted of a hot pack to the left shoulder for 20 minutes and 20 minutes of therapeutic exercises. Id. Defendant contends that the treatment notes indicate plaintiff "tolerated therapeutic exercises well with no complaints of pain." Id.

4

Defendant was finally seen by an orthopedist on October 19, 2011, and he was diagnosed with a posterior shoulder dislocation, based upon a physical examination and confirmed by x-ray imaging. Def.'s Mem., 3.; Pl.'s Stmt. M. F., ¶33. Dr. Shah, the diagnosing orthopedist, further informed plaintiff that he would need surgery to reduce the shoulder and may need a bone graft to fill the Hills-Sachs lesion. Id. Dr. Shah gave plaintiff a sling and ordered that occupational be discontinued. Def.'s Mem., 3.

Plaintiff submits no facts beyond the October 19, 2011 orthopedic visit. However, defendant submits a litany of missed appointments and instances where plaintiff sought pain medication. See Def.'s Mem. 3-6. For example, defendant contends that plaintiff went to the emergency room just two hours after Dr. Shah diagnosed his posterior shoulder dislocation, seeking pain medication. Def.'s Mem., 3.

Plaintiff had a computerized tomography ("CT") scan on October 25, 2011, which confirmed the posterior dislocation but plaintiff did not schedule a follow-up appointment with orthopedics as directed. Def.'s Mem., 3-4. Instead, plaintiff returned to the walk-in clinic on November 15, 2011, complaining of shoulder pain and saying his lawyer advised him that he had been misdiagnosed and required a second opinion before surgery. Def.'s Mem., 4. Plaintiff returned to the walk-in clinic on December 8, 2011, seeking a refill of his pain medication. Id. He reported that he had been told that he needed surgery and had an orthopedic appointment on December 13, 2011, but needed to sue Albany VAMC for misdiagnosing his dislocation. Id. Plaintiff was given pain medication and told to follow up with orthopedics at his December 13 appointment. Id. Plaintiff failed to show for the orthopedic appointment and was rescheduled for January 10 and February 3, 2012, which

5

he also failed to attend. Id. However, plaintiff did go to the emergency department on January 2, January 7, January 18, and February 17, 2012, seeking pain medication. Id. On March 9, 2012, plaintiff again visited the walk-in clinic, received pain medication, and was instructed to follow up with orthopedics. Def.'s Mem., 4. An appointment was scheduled for March 13, 2012, but plaintiff missed that appointment. Id. Plaintiff was finally seen by orthopedics on March 15, 2012. Id. Plaintiff stated that he had failed to show for the appointments, since October 2011, due to personal issues, including the loss of housing and moving 200 miles away. Id. He was scheduled for surgery on April 17, 2012, but failed to show for his pre-operative appointments on April 9 and 10. Def.'s Mem., 4-5. Attempts to contact plaintiff were made to no avail, and his operation was cancelled. Id. at 5. Plaintiff appeared for his surgery on April 16, and was informed that it was cancelled due to his failure to attend pre-operative appointments. Id. Plaintiff was contacted on May 2, 2012, and informed that his surgery would be later in the month and that he needed to attend pre-operative appointment with Dr. Kwon on May 10, 2012. Id. Plaintiff failed to appear for the appointment, but visited the emergency department on May 17, 2012, seeking pain medication. Id.

On May 25, 2012, Plaintiff was contacted by Dr. Shapiro. Def.'s Mem., 5. Dr. Shapiro discussed plaintiff's use of pain medication, and informed him that he needed to be seen by Dr. Kwon at the orthopedics clinic on June 12, 2012. Id. Plaintiff informed Dr. Shapiro during that call that he had re-injured the shoulder during an altercation the prior evening, and Dr. Shapiro advised plaintiff to go to the emergency department. Id. No emergency department visit was documented, but plaintiff called the VA helpline on June 4 and 5, 2012 seeking stronger pain medication. Id.

6

Dr. Shapiro again spoke to plaintiff by telephone on June 5, 2012, noting that he had failed to go the emergency department on May 25 as advised. Id. Dr. Shapiro changed plaintiff's Vicodin prescription to Percocet, and reminded plaintiff of his orthopedics appointment on June 12. Id.

Plaintiff failed to appear for the orthopedics visit with Dr. Kwon on June 12, 2012. Def.'s Mem., 5. A nurse contacted plaintiff and rescheduled the appointment for July 10, 2012. Id. There is a lack of information in defendant's papers as to what happens between June 12 and September 2012. However, plaintiff was finally seen by Dr. Kwon on September 11, 2012. Def.'s Mem., 6. His surgery was rescheduled for October 9, 2012, yet plaintiff failed to appear at his September 25 pre-operative appointment. Id. Plaintiff's surgery was again cancelled. Id. Plaintiff's care was later transferred to the Maryland VAMC at the suggestion of his attorneys. Id.

At the time of the submission of the briefs, plaintiff had not undergone surgery and was in need of a shoulder replacement. Def.'s Mem., 6; Pl.'s Stmt. M. F., ¶ 34.

### III. LEGAL STANDARDS

#### A. Summary Judgment

Plaintiff has moved for a partial summary judgment. The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law."

Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). Such a fact is genuinely in dispute only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of genuine issue of material fact as to a dispositive issue. Celotex, 477 at 323. If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment, who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in its favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Anderson, 477 U.S. at 250 (stating that once the movant meets its initial burden, the opposing party must show, through affidavits or otherwise, that a material issue of fact remains for trial). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48 (emphasis in original).

Importantly, a court considering a motion for summary judgment "cannot try issues of fact; it can only determine whether there are issues to be tried." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36-37 (2d Cir. 1994) (citations omitted). In making this determination, a court resolves any ambiguities or inferences to be made from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553.

**B. Federal Tort Claims Act**

The Federal Tort Claim Act ("FTCA") authorizes "claims against the United States, for money damages for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346 (b)(1). Under the FTCA, courts are bound to apply the "law of the place where the act or omission occurred." 28 U.S.C. §1346 (b)(1); Makarova v. United States, 201 F. 3d. 110, 114 (2d Cir. 2000). New York law applies to plaintiff's claims, because it is undisputed that plaintiff's treatment and related injuries occurred in New York.

**C. New York Medical Malpractice**

Plaintiff's claim sounds in medical malpractice. "Under New York law, a medical malpractice plaintiff must establish (1) the standard of care where the treatment occurred, (2) that the defendant breached the standard of care, and (3) that this breach proximately caused the injury." Hogan v. A.O. Fox Mem'l Hosp., 346 F. App'x 627, 630 (2d Cir. 2009) (summary order).

Further, "it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." Sitts v. United States, 811 F.2d 736, 739 (2d Cir. 1987); see also Milano by Milano v. Freed, 64 F.3d 91, 91 (2d Cir. 1995) (quoting Fiore v. Galang, 64 N.Y.2d 999, 1001 (1985) ("[E]xcept as to matters within the ordinary experience and knowledge of laymen, . . . expert medical opinion evidence is required" to establish these elements.").

9

"New York requires physicians to possess the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he practices, to exercise ordinary and reasonable care, not extraordinary knowledge and ability that belongs to a few doctors of exceptional ability." Coolidge v. United States, 2015 U.S. Dist. LEXIS 13158, at *12 (W.D.N.Y. Sept. 28, 2015) (internal citation omitted). Accordingly, [n]ot every instance of failed treatment or diagnosis may be attributed to a doctor's failure to exercise due care." Nestorowich v. Ricotta, 97 N.Y.2d 393, 398 (2002). Instead, a doctor "is not required to achieve success in every case and as such, cannot be held liable for mere errors in professional judgment." Schrempf v. State of N.Y., 66 N.Y.2d 289, 295, (1985); Pike v. Honsinger, 155 N.Y. 201, 210 (1898) (a doctor's obligation is to "use the skill and learning of the average physician, to exercise reasonable care and to exert his best judgment in the effort to bring about a good result") (emphasis added)); see also O'Sullivan v. Presbyterian Hosp. in the City of N.Y. at Columbia Presbyterian Med. Ctr., 217 A.D.2d 98, 100 (1st Dep't 1995) (holding that liability will not lie for honest errors in judgment, unless the doctor's judgment was not based on intelligent reasoning or on an adequate examination).

To prove a breach occurred, " . . . the plaintiff ordinarily must show what the accepted standards of practice were and that the defendant deviated from those standards or failed to apply whatever superior knowledge he had for the plaintiff's benefit." Sitts, 811 F.2d at 739-40 (citations omitted); cf. Loveless v. American Ref-fuel Co. of Niagara, 299 A.D.2d 819, 820 (4th Dep't 2002) (stating that until the movant establishes its entitlement to judgment as a matter of law, the burden does not shift to the opposing party to raise an issue of fact and the motion must be denied). Once plaintiff meets his

10

burden, the burden of production shifts to the non-moving defendant who may submit "affidavits and/or deposition testimony and medical records which rebut plaintiff's claim of [medical] malpractice with factual proof." Zikianda v. Cty. of Albany, 2015 U.S. Dist. LEXIS 122363, at *16-17 (N.D.N.Y. Sept. 15, 2015) (quoting Suib v. Keller, 6 A.D.3d 805, 806 (3d Dept. 2004)) (internal citations omitted). A plaintiff is then required to "rebut defendant's showing by demonstrating, typically through expert medical opinion, a deviation from accepted practice and that the deviation was the proximate cause of the injury." Id. at *17.

## IV. DISCUSSION

As an initial matter, it is incumbent upon plaintiff, the movant here, to establish a prima facie case of medical malpractice in order to receive a grant of summary judgment. And plaintiff, as a matter of law, has met that burden by proffering expert testimony to establish each element of medical malpractice. The burden of production then shifts to defendant to raise an issue of fact for trial. For the reasons set forth below, defendant has successfully raised questions of fact that are best left to the finder of fact to resolve.

Defendant has raised genuine issues of material fact by putting forth conflicting expert opinions. Defendant put forth the testimony of Gregory G. Degnan, M.D., a board certified orthopedic surgeon, and plaintiff did not raise any challenges to this proffer. Defendant has shown through its expert's sworn testimony that the posterior dislocation is "difficult to diagnose" and is misdiagnosed upon initial presentation in fifty percent of cases, even by emergency medicine physicians. Degnan Dep., ECF No. 36-2, 14-15, 29-30. Further, as a board certified orthopedic surgeon, defendant's expert said that he saw "probably one [posterior dislocation] a year, on average" while practicing medicine in a

11

university hospital setting where he saw thousands of patients annually. Id. at 13. To this point, when plaintiff was finally seen by an orthopedist, who ostensibly has more experience with this rare injury, plaintiff was diagnosed immediately. This directly conflicts with plaintiff's testimony and creates a credibility issue best determined by the fact finder. Indeed, "'[w]here the parties offer conflicting expert opinions, issues of credibility arise requiring jury resolution.'" Zikianda, 2015 U.S. Dist. LEXIS 122363, at *98 (quoting Martin v. Siegenfeld, 70 A.D.3d 786, 788 (2010); see also Milano by Milano v. Freed, 64 F.3d 91, 97 (2d Cir. 1995) (summary judgment inappropriate when defendants' "doctors' contentions are again contradicted by the testimony of [plaintiff's] experts at trial").

Based upon these facts also, defendant has raised issues of fact regarding whether the examining physicians – an emergency medicine physician and general physician – fell below the standard of care or simply acted as reasonable doctors of average skill who unfortunately missed an uncommon and difficult to diagnose condition. See Nestorowich, 97 N.Y.2d at 398. And it very well may be the case that this was an unacceptable failure to diagnose, but it cannot be fairly said, at this juncture, that defendant doctors failed to "exercise ordinary and reasonable care." Coolidge, 2015 U.S. Dist. LEXIS 13158, at *12. In fact, the orthopedic expert put forth by defendant spoke directly to these points, presenting testimony that conflicts with plaintiff's regarding the standard of care. See Hayden v. Gordon, 91 A.D.3d 819, 937 N.Y.S.2d 299 (2d Dep't 2012) (stating that conflicting expert opinions as to whether defendant-doctor departed from accepted standards of medical care and whether such departure was the proximate cause of the decedent's injuries are questions of material fact which must be determined by the trier of fact).

12

And in his reply, plaintiff failed to overcome the issues raised by defendant. For example, defendant's expert spoke directly to the fact that the posterior dislocation is missed in fifty percent of initial presentations. Degnan Dep., 14-15, 29-30. Plaintiff provided two orthopedists and one radiologist. However, neither doctor spoke to this point. In fact, plaintiff's expert orthopedic surgeon spoke to the misdiagnosis, but failed to identify the standard of care owed. His only statement was conclusory, such that emergency medicine physician, Dr. Tress, "misdiagnosed" plaintiff without expounding further. Kiritsis Dep., ECF No. 31-3, ¶ 14. Plaintiff has failed to show what the average physician, exercising reasonable care and exerting his best judgment would have done. Sitts, 811 F.2d at 739 (where plaintiff failed to produce any evidence as to what the "accepted standards of practice were and that defendant deviated from those standards or failed to apply whatever superior knowledge he had for plaintiff's benefit"). Thus, given the conflicting expert testimony, there are questions of fact that are best left to the fact finder to determine.

## V. CONCLUSION

As a result, a genuine issue of material fact exists as to whether defendant committed medical malpractice.

Therefore it is

ORDERED that

Plaintiff's partial motion for summary judgment is DENIED.

_____
United States District Judge

Dated: February 24, 2016
        Utica, New York